Muse Buick,
Oscar Tate Buick,
Connie Hack Buick, and
Dowell Pontiac-Buick-GMC

v.

Jess DuBoy Advertising, Inc.,
and William Allen

February 1, 1989

Case No. LM-1109-4

By JUDGE RANDALL G. JOHNSON

This action was filed by four Buick automobile dealers against Jess DuBoy Advertising, Inc., and one of DuBoy's employees, William Allen. Count I of the three-count motion for judgment alleges that in March, 1986, defendants "knowingly and intentionally induced the plaintiffs to participate in an advertising campaign to promote the sale of Buicks" at a price of "$149.00 over factory invoice." The plaintiffs were to be listed in the advertisements and "each of them was to offer Buicks for sale as advertised." Plaintiffs further allege that they specifically asked defendants whether such a campaign violated state or federal antitrust laws and were assured by defendants that it would not. In addition, the plaintiffs allege that Allen represented to them that DuBoy had received approval for a similar advertisement from the Attorney General of the United States. These statements, according to plaintiffs, were untrue when made and were known or should have been known to be untrue by defendants. Plaintiffs claim that as a result of defendants' representations, they agreed

to participate in the advertising campaign, paying DuBoy for its services in that regard.

Shortly after the campaign was completed, each of the plaintiffs "became the target of an investigation by the [state] Attorney General for violation of the Virginia Anti-Trust [sic] Act." As a result, according to plaintiffs, each of the plaintiffs "was forced to expend sums in attorneys fees, pay fines, and be subject to substantial adverse publicity that held them up to public ridicule and embarrassment." Plaintiffs seek compensatory and punitive damages for defendants' breach of their "implied duty of honesty and fair dealing and their duty to use ordinary care."

Count II alleges the same facts as Count I but seeks damages for breach of contract.[1] Count III, which again alleges the same facts as Count I, asks the court to "declare the acts and practices alleged to be a violation of the Virginia Anti-Trust [sic] Act" and to award damages because "defendants knowingly and willfully induced the plaintiffs to enter into [a] contract, combination or conspiracy" which violated said Act.

Defendants have filed demurrers to all three counts of the motion for judgment. In addition, DuBoy has filed a motion to strike counts I and II on the ground that they fail to state a cause of action against DuBoy. Allen has also filed a motion to strike on the ground that no cause of action is stated against him, but his motion attacks all three counts. Finally, both defendants have filed motions to dismiss for misjoinder of plaintiffs and motions to require plaintiffs to elect whether they will proceed in tort or in contract. Because the court concludes that defendants' demurrers are well taken, the other motions need not be considered.

---

[1] Counsel for plaintiffs has now conceded that defendant Allen cannot be held liable for breach of contract since he was an agent for a disclosed principal (Duboy) and the contract was between the plaintiffs and Duboy. See, e.g., Richmond Union Passenger Ry. Co. v. New York & Sea Beach Ry. Co., 95 Va. 386, 395, 28 S.E. 537 (1897). Thus, Count II is now asserted only against Duboy.

## 1. *Implied Duty of Honesty and Fair Dealing and Duty to Use Ordinary Care.*

As stated above, Count I of the motion for judgment seeks to state a cause of action for defendants' breach of their "implied duty of honesty and fair dealing and their duty to use ordinary care." While the law generally holds fiduciaries to a standard which might be described as a duty of honesty and fair dealing with their wards or estates, the relationship between plaintiffs and defendants here was not a fiduciary one. Instead, it was a business relationship between *sui juris* parties of presumably equal standing. Moreover, in order to impose on defendants the duties sought to be imposed by plaintiffs here, including the duty of ordinary care, the court must hold that defendants, an advertising agency and its employee, have a duty to render valid legal opinions *and* that plaintiffs have a right to rely on the opinions given. The court will not make such a holding.

In *Hicks v. Wynn*, 137 Va. 186, 119 S.E. 133 (1923), the Supreme Court stated:

> A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so, it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be decided by ordinary vigilance and attention. It is an opinion in regard to the law and is always understood as such.
>
> The law is presumed to be equally within the knowledge of all parties. 137 Va. at 196 (*quoting Fish v. Clelland*, 33 Ill. 243 (citations omitted)).

Here, there is no allegation that defendants are lawyers or that their opinions regarding legal matters are entitled to any more credence than the opinions of laymen generally. While plaintiffs may have relied on the representations made, they had absolutely no right to do so. Thus, any reliance by plaintiffs on defendants' representations regarding what did and what did not violate

state and federal antitrust laws was plaintiffs' folly, and no cause of action is stated.[2]

Similarly, the fact that Allen told plaintiffs that Duboy had received "approval for a similar advertisement from the Attorney General of the United States" also does not state a cause of action here. With lawyers and judges constantly struggling to determine what cases and opinions (including attorneys general's opinions) are similar, it would be unrealistic to require untrained laymen to make such determinations. More importantly, since any such representation is necessarily merely the opinion of the speaker, the other party has no right to rely on it if the speaker is a layman. Since all of the alleged representations made by defendants in this case concern the interpretation of state and federal law, or the interpretation of the "approval" of the United States Attorney General in a "similar" case, and since defendants are laymen upon whose legal opinions plaintiffs had no right to rely, no cause of action exists in favor of plaintiffs even if those representations were known by defendants to be false.

## 2. *Breach of Contract.*

The law in Virginia with regard to illegal contracts is aptly set out in 4B M.J., *Contracts*, § 125 (pp. 211-12). Where a contract is illegal because contrary to positive law or against public policy, an action cannot be maintained to enforce it. Neither a court of law nor a court of equity will aid one of the parties to such a contract in enforcing it or give damages for a breach of it, or set it aside at the suit of the other. Whenever the illegality of a contract appears, whether alleged in the pleadings or made known for the first time in the evidence, it is fatal to the case. *Id.*

---

[2] Plaintiffs argue that they should be allowed to present expert testimony to show that in the advertising industry, clients properly and routinely rely on opinions such as those allegedly rendered by defendants here. What properly constitutes a cause of action, however, is determined by the legislature and the common law, not by the opinions of experts.

Here, Count II of the motion for judgment seeks damages for breach of contract. Plaintiffs' whole case, however, is predicated upon plaintiff's claim that the contract sued upon was illegal; that is, that it violated the Virginia Antitrust Act. Because the illegality of the contract is alleged in plaintiffs' pleading and because neither party can sue for damages arising out of the breach of such an illegal contract, plaintiffs' claim for breach of contract cannot stand.

3. *Inducing Entry into an Illegal Contract, Combination, or Conspiracy.*

The final count of the motion for judgment seeks damages for defendants' having induced plaintiffs to enter into a "contract, combination, or conspiracy with the defendants in restraint of trade within the meaning of the Virginia Anti-Trust [*sic*] Act." To the extent that such inducement involved defendants' representations about the legality of the advertisement, this count is defective for the same reasons set out under Count I above. To the extent that such inducement involved some other conduct on the part of the defendants sufficient to make out a cause of action, such other conduct is nowhere stated in the motion for judgment. Accordingly, the demurrers to Count III must also be sustained.

4. *Conclusion.*

For the reasons stated above, the demurrers to all three counts of the motion for judgment will be sustained. While the deficiencies of Counts I and II are ones that, in the court's view, cannot be cured by amendment, the court will allow plaintiffs fifteen days in which to amend Count III to specifically state the conduct they believe defendants engaged in *and* which states a cognizable cause of action. Defendants will then have fifteen days in which to file their responsive pleadings.